```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PETER PRICE,

                    Plaintiff,              MEMORANDUM & ORDER
                                            11-CV-1811(JS)(AKT)
          -against-

VILLAGE OF WESTHAMPTON BEACH,
CONRAD TELLER, Individually and as
Mayor of the Village of Westhampton
Beach, TONI-JO BIRK, LEOLA FARRELL,
JOAN S. LEVAN, each Individually and
as Trustees of the Village of
Westhampton Beach, PAUL HOULIHAN,
Individually and as an employee of
the Village of Westhampton Beach,
BRIDGET NAPOLI, Individually and as
an employee of the Village of
Westhampton, and ALBERT TUZZOLO,

                    Defendants.
----------------------------------X
```
APPEARANCES:
For Plaintiff:     Peter Price, pro se
                   P.O. Box 51
                   24 Liberty Avenue
                   West Hampton Beach, NY 11978

For Defendants:    David H. Arntsen, Esq.
                   Devitt Spellman Barrett, LLP
                   50 Route 111
                   Smithtown, NY 11787

SEYBERT, District Judge:

Pro se Plaintiff Peter Price sued Defendants Village of Westhampton (the "Village"), Conrad Teller, Toni-Jo Birk, Leola Farrell, Joan S. Levan, Paul Houlihan, Bridget Napoli, and Albert Tuzzolo (collectively, "Defendants") in a case that arises primarily out of alleged religious discrimination.

Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint; for the following reasons, this motion is GRANTED. Plaintiff's Amended Complaint is dismissed with leave to file a Second Amended Complaint within thirty (30) days. Additionally, the Court is in receipt of Plaintiff's January 5, 2012 letter motion to file a Second Amended Complaint. In light of this Order, Plaintiff's motion is moot.

## BACKGROUND[1]

The Village is an incorporated village in Suffolk County, New York. (Am. Compl. ¶ 2.) Defendant Teller is the Village Mayor and Defendant Levan is one of the Village's four Trustees. Levan is also a Trustee of the Westhampton Beach Free Library (the "Library") along with non-party Hank Tucker. Like Levan, Tucker is both a Village and Library Trustee. (Id. ¶ 26.)

I. Plaintiff's Property

Plaintiff, who is Jewish, lives at 24 Library Avenue (the "Property"). The Property has a main house and an approximately sixteen-by-fifty foot outbuilding (the "Outbuilding") set back from the main house. (Id. ¶ 6.) The

---

[1] The following facts are taken from Plaintiff's Amended Complaint and assumed to be true for the purposes of this motion.

Outbuilding, which has two apartments, dates back to 1961. Plaintiff's father built the Outbuilding and submitted the drawings to the then-building inspector. The Outbuilding was inspected, but a certificate of occupancy was apparently never issued. (Id. ¶¶ 6-9.)

## II. The Temporary Library

"A few years back," Village voters passed a referendum to build a new Library building, and funds were allocated for a temporary building that would tide the Village over until the new building was complete. (Id. ¶ 26.) One of the proposed sites for the temporary building was an empty piece of land next to Plaintiff's property. The Court will refer to this site, which was owned by non-party Oak Gentry, as the "Gentry Lot." Plaintiff criticized this choice as a waste of money and, as a way to cut costs, he suggested several sites with preexisting structures. At a public meeting, Plaintiff spoke in opposition to the Gentry Lot proposal but was ultimately unsuccessful in blocking the plan. (Id. ¶¶ 27-35.)

Once the decision to build the temporary library on the Gentry Lot was final, the Library obtained a change-of-use permit from the Village and began making improvements to the land. The Library used Mr. Gentry as a general contractor for the project, paid him rent for using his land, and made

3

improvements to his property worth approximately $100,000. (Id. ¶¶ 36-44.)

III. Plaintiff's Building Violations

In 2007, Plaintiff was cited for improperly using the Outbuilding as an office. (Id. ¶ 56.) In Plaintiff's view, the evidence in support of this charge was the product of an illegal trespass and search by Defendant Napoli. (Id. ¶ 57.) And, at around the same time that Plaintiff received this citation from the Village, the Town of Southampton--not a party here--issued Plaintiff five summonses (which were drafted by Defendant Tuzzolo) for property violations on properties Plaintiff owns in Southampton. (Id. ¶ 75.) These properties are "miles apart" (id.) and, according to Plaintiff, "[t]here were no police calls or any other reason to locate these properties except for 'special' attention . . . [i]n order to receive this collection of summons [sic] I had to be singled out, it had to come from my problems with the Village." (Id. ¶ 77.) Plaintiff appeared in Village Court to defend himself on the first citation, but he claims that the Village attorney did not produce the discovery to which Plaintiff was entitled. (Id. ¶ 74.)

IV. Additional Allegations

Plaintiff alleges three other incidents involving Village employees in or near his home. In the first, Plaintiff

4

was upgrading the windows and siding on his home when a Village building inspector entered his home through a window opening. Plaintiff applied for a building permit to upgrade the windows and siding--presumably as a result of his encounter with the building inspector, but this is not entirely clear--and his property taxes were raised as a result. (Id. ¶¶ 79-86.) Plaintiff points to this as another example of his being "singled out." (Id. ¶ 87.) In the second, Defendants Houlihan and Napoli stood on the Gentry Lot and observed Plaintiff planting arborvitae on Plaintiff's side of the property line. Houlihan falsely told Plaintiff that the plantings were illegal and told Plaintiff that "Oak"--referring to Gentry--"wouldn't like me planting trees." (Id. ¶¶ 88-90.) During this episode, Napoli crossed onto Plaintiff's Property without permission. (Id. ¶ 91.) In the third, a Village police officer threatened to arrest Plaintiff and his wife if they approached the Gentry Lot. (Id. ¶¶ 105-111.)

V. Alleged Anti-Semitism

In addition to the allegations described above, Plaintiff intersperses his Amended Complaint with accusations of anti-Semitism among Village residents and employees. Without recounting all of Plaintiff's allegations, the Court notes that the accusations run from the specific (e.g., id. ¶ 45 (former

5

Village attorney shouted to Plaintiff: "you fucking jews [sic]") to the general (id. ¶ 18 (Village "established a rich heritage of anti-Semitism and bias toward non Christians [sic]"), and it is clear that Plaintiff believes that the Village has treated him unlawfully because he is Jewish (id. ¶¶ 47 ("There is a different rule for jews [sic] in the Village."), 51 ("I am again singled out for special treatment.")).

## DISCUSSION

The Amended Complaint purports to set forth seven claims. Plaintiff alleges that Defendants (1) violated Plaintiff's civil rights; (2) deprived Plaintiff of his property rights; (3) deprived Plaintiff of his due process rights; (4) took property from Plaintiff without due process; (5) trespassed on Plaintiff's land; (6) harassed Plaintiff; and (7) threatened to arrest Plaintiff and his wife if they approached the Gentry Lot again. The Amended Complaint fails to state a plausible claim for relief and must be dismissed.

## I. Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not

need "detailed factual allegations[,]" but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Additionally, although Plaintiff is representing himself in this litigation, he is a lawyer by training and he has litigated before the United States District Court for the Eastern District of New York. See Docket Entry 1, East End Eruv Assoc., Inc. v. Village of Westhampton Beach, No. 11-CV-0213 (E.D.N.Y.) (listing "Peter R. Price, 24 Library Avenue, Westhampton Beach, NY 11978" as "Of Counsel"); see also In re Peter R. Price, Esq., No. 11-MC-0516 (E.D.N.Y. July 22, 2011) (suspending Price from practicing before the Eastern District). Accordingly, the Court is not inclined to read Plaintiff's pleading as broadly as it would for a non-lawyer pro se

7

litigant. See, e.g., Sembler v. Attention Funding Trust, No. 07-CV-2493, 2009 WL 2883049, at *1 (E.D.N.Y. Sept. 3, 2009) (report and recommendation) adopted by 2009 WL 3055347 (E.D.N.Y. Sept. 24, 2009); c.f., Smith v. N.Y. Presbyterian Hosp., 254 F. App'x 68, 70 (2d Cir. 2007).

II. Application

The gravamen of Plaintiff's case appears to be that he is the victim of anti-Semitism and that Village officials discriminated against Plaintiff by (1) deciding to site the temporary library building on the Gentry Lot despite Plaintiff's opposition; (2) citing Plaintiff for using the Outbuilding as an office; (3) requiring Plaintiff to pay higher taxes after he upgraded the windows and siding on his house; (4) trespassing on Plaintiff's land; (5) falsely telling Plaintiff that it was illegal to plant trees on his Property; and (6) warning Plaintiff that he would be arrested if he entered the Gentry Lot.

Section 1983 of Title 42 of the United States Code ("Section 1983") provides in part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

> any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. To state a claim under this law, a plaintiff must allege: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States. See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130, 143 (1999).

In light of the numerous allegations that Plaintiff was "singled out" and discussion of anti-Semitism in the Village, the Court presumes that Plaintiff's first claim, which alleges simply that Defendants violated his civil rights, is grounded in the Equal Protection Clause of the Fourteenth Amendment. To state an Equal Protection claim, Plaintiff must show

> (1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185

F.3d 12, 16 (2d Cir. 1999)). Here, Plaintiff has not alleged facts to support a plausible claim that his alleged selective treatment was motivated by his religion. An anecdotal discussion of the prejudice Plaintiff's parents faced as immigrants (Am. Compl. ¶¶ 15-17), an allegation that a former Village attorney with no personal involvement in this case once yelled "you fucking jews" (id. ¶ 45), and conclusory allegations that certain Village Trustees ran anti-Semitic election campaigns (id. ¶¶ 20, 23) do not state a plausible claim that Defendants singled Plaintiff out because he is Jewish. See Toussie v. Town Bd. of Town of E. Hampton, No. 08-CV-1922, 2010 WL 597469, at *9 (E.D.N.Y. Feb. 17, 2010); Traylor v. Steward, No. 10-CV-0639, 2011 WL 4452197, at *7 (D. Conn. Sept. 26, 2011) (noting that conclusory, unsupported allegations of an impermissible motive are insufficient to state an Equal Protection claim).[2]

---

[2] The Court notes that to the extent Village officials took action against Plaintiff after he publicly opposed building the temporary library on the Gentry Lot, such conduct may in certain circumstances give rise to a First Amendment retaliation claim. The Amended Complaint leaves the clear impression that Plaintiff believed that religious discrimination motivated Defendants' alleged behavior, not his comments concerning the Library, and the Court will not read a First Amendment claim into a pleading that a lawyer drafted. In any event, such a claim would have to be dismissed because, among other reasons, Plaintiff has not alleged "actual chilling." Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011).

Plaintiff's allegations are insufficient to plead an Equal Protection claim, but this is not the only shortcoming in his Amended Complaint. He does not set forth facts to support an allegation that the Village had an unlawful pattern or practice required to maintain a Section 1983 claim against a municipality, e.g., Sheehan v. N.Y.C. Police Dep't 78th Precinct Officers, No. 01-CV-4015, 2003 WL 22859947, at *4 (E.D.N.Y. Dec. 1, 2003) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)), and, for many of the individual defendants, he does not allege facts to show that they were personally involved in the alleged violations, Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011). Plaintiff will be afforded leave to file a Second Amended Complaint and if he does so he should keep these requirements in mind.

The remainder of Plaintiff's claims must be dismissed also. The Amended Complaint does not allege facts sufficient to state a procedural due process claim. See N.Y. State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 163 (2d Cir. 2001) (describing elements of procedural due process claim, including that the state did not provide plaintiff with adequate pre- or post-deprivation process). And, as this case is relatively young, the Court declines to exercise supplemental jurisdiction

over Plaintiff's state law claims.  Johnson v. Levy, __ F. Supp. 2d __, 2011 WL 4375671, at *15 (E.D.N.Y. Sept. 19, 2011) (declining to exercise supplemental jurisdiction in part because of the early stage of the litigation).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's Amended Complaint is dismissed.  Plaintiff may file s Second Amended Complaint within thirty (30) days from the date of this Order.  Plaintiff's January 5, 2012 letter motion to amend is moot in light of the Court's decision granting leave to amend.  The Clerk of the Court is respectfully directed to mail Plaintiff a copy of this Order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    February 3, 2012
          Central Islip, New York